R. A. HOLMAN & CO., Inc., Appellant, v.

SECURITIES AND EXCHANGE COMMISSION et al., Appellees.

No. 16464.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 3, 1961.

Decided Jan. 18, 1962.

Mr. Milton V. Freeman, Washington, D. C., with whom Mr. Stuart J. Land, Washington, D. C., was on the brief, for appellant. Mr. Edgar Brenner, Washington, D. C., also entered an appearance for appellant.

Mr. David Ferber, Asst. General Counsel, Securities and Exchange Commission, with whom Mr. John A. Dudley, Attorney, Securities and Exchange Commission, was on the brief, for appellees.

Before PRETTYMAN, WASHINGTON and BURGER, Circuit Judges.

WASHINGTON, Circuit Judge.

This litigation challenges the validity of action taken by the Securities and Exchange Commission against the appellant company, a registered broker-dealer in securities, which has specialized in underwriting securities pursuant to Regulation A of the Commission. Under Regulation A, speaking generally, public offerings of $300,000 or less are exempt from the principal registration requirements of the Federal securities legislation.[1] On the basis of material reported to it by its staff, the appellee Commission on September 16, 1960, temporarily suspended the Regulation A exemption for the stock of Pearson Corporation, underwritten by appellant, and ordered hearings under its Rule 261 as to whether the suspension should be made permanent.[2] On September 26, 1960, the Com-

1. Regulation A was promulgated pursuant to Section 3(b) of the Securities Act of 1933, 15 U.S.C.A. § 77c(b). It comprises Rules 251 through 262 of the Commission's Rules and Regulations under the Act.

2. Rule 261 provides, in part:
"(a) The Commission may, at any time after the filing of a notification, enter an order temporarily suspending the exemption, if it has reason to believe that—
"(1) no exemption is available under this regulation for the securities purport-

mission instituted proceedings to determine whether grounds were present to revoke or suspend Holman's registration as a broker and dealer in securities. The registration and the Regulation A suspension proceedings were combined on October 31, 1960, and additional violations of the securities laws were alleged on November 15, 1960.[3] Hearings commenced on December 16, 1960, and have been continuing intermittently.

The Commission order of September 16, 1960, which temporarily suspended the Regulation A exemption, brought Rule 252(e) (2), which is included in Regulation A, into operation. This Rule provides:

"(e) No exemption under this regulation shall be available for the securities of any issuer if any underwriter of such securities, or any director, officer or partner of any such underwriter was, or was named as, an underwriter of any securities—

\* \* \* \* \* \*

"(2) covered by any filing which is subject to pending proceedings under Rule 261 or any similar rule adopted under section 3(b) of the Act, or to an order entered thereunder within five years prior to the filing of such notification."

The Rule thus automatically disqualified appellant from engaging in the distribution of securities under the privileges given by Regulation A. The disqualification will be removed if the Commission upon completion of the proceedings under Rule 261 decides to revoke the suspension order.

Appellant brought suit in the District Court on June 13, 1961, contending that Rule 252(e) (2) is invalid because it deprives Holman of a substantial going business without notice or hearing. The complaint also charges that the Commission's proceedings are void because the order precipitating them was issued without a quorum and because of alleged ex parte communications by the Commission staff to members of the Commission. Appellant's requests for an injunction against continuation of Commission proceedings, and for a declaratory judgment holding Rule 252(e) (2) invalid, were denied by the District Court. Appellant's motions for a preliminary injunction and a stay of the Commission's proceedings were also denied.[4]

The threshold question is whether the District Court had jurisdiction to grant the relief requested. We believe it did as to the Rule 252(e) (2) issue, for reasons to be given presently. But we think that it lacked jurisdiction on the question of the procedural irregularities in the Commission proceedings alleged by appellant. Section 25 of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78y, and Section 9 of the Securities Act of 1933, 15 U.S.C.A. § 77i, both provide for direct review in the Courts of Appeals of Commission orders. Appellant has permitted the sixty-day period, within which it might have sought review in a Court of Appeals, to expire. That statutory route certainly is appli-

ed to be offered hereunder or any of the terms or conditions of this regulation have not been complied with, including failure to file any report as required by Rule 260.

"(2) the notification, the offering circular or any other sales literature contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading \* \* \*."

3. In general, the charges against appellant are that the Pearson offering exceed-

ed the $300,000 statutory maximum because a substantial block of the stock was purchased by a director of appellant (and his family) for his own account, sold back to Holman at higher prices, and thereafter resold to the public by Holman at various prices in excess of the initial offering price. The Commission also claims that material used in connection with several offerings contained untrue statements.

4. This court denied a stay of the Commission's administrative proceedings, pending review, as well as a stay of the effectiveness of Rule 252(e) (2).

cable where mere procedural errors of the kind asserted by Holman are involved. Cf. American Sumatra Tobacco Corp. v. Securities and Exchange Commission, 68 App.D.C. 77, 93 F.2d 236 (1937); Securities and Exchange Commission v. Andrews, 88 F.2d 441 (2d Cir. 1937). The allegations made here—as to lack of a quorum and as to ex parte communications—even if true, are not necessarily of a fundamental nature, and the evidence developed in the hearing may prove to be such that, in the context of the whole case, the procedural irregularities will not amount to reversible error. Cf. UNA Chapter, Flight Engineers' International Ass'n AFL-CIO v. National Mediation Board, 111 U.S.App.D.C. 121, 294 F.2d 905 (1961). Allowing the Commission a prior opportunity to decide these matters avoids agency delay and gives the Commission a chance to correct its own errors. It may also, of course, eliminate any need for court review if the Commission eventually decides in Holman's favor.

■ On the other hand, Holman's challenge in the District Court to Rule 252(e) (2) would not seem to be precluded by the statutory provision for review by a Court of Appeals. Holman does not, in this suit, contest the validity of the temporary suspension of the Pearson issue, as such. Appellant's real attack is not against the suspension "order," which if final might have been subject to direct appellate review,[5] but against the consequence resulting from the operation of a separate rule, which followed from the temporary suspension. It therefore

seems highly unlikely that Holman would have been permitted to obtain review of the temporary suspension order immediately and directly in this court.[6] But if Rule 252(e) (2) is invalid, Holman's business will have been extensively and perhaps irremediably damaged long prior to review of a final order.

We do not read the statutes which provide for direct review by this court as being exclusive where an order in itself is not being challenged, and where relief from its allegedly unconstitutional consequences might come too late. On the contrary, this would seem to be precisely the kind of situation where a direct test of the rule in a declaratory judgment proceeding would seem appropriate. Such a procedure is not only expeditious, but seems clearly within the intention and terms of both the Declaratory Judgments Act, 28 U.S.C. § 2201, and Section 10(b) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(b). See B. F. Goodrich Co. v. Federal Trade Commission, 93 U.S.App.D.C. 50, 208 F.2d 829 (1953); Parker v. Lester, 227 F.2d 708 (9th Cir. 1955).

■ Appellee argues that appellant has not exhausted its administrative remedy under Rule 252(f), which provides that "upon a showing of good cause that it is not necessary under the circumstances that the exemption be denied," the disqualifying provisions of Rule 252 (e) (2) shall not apply. We agree with Holman that the remedy provided by Rule 252(f) is inadequate to give it full relief. In effect, that Rule gives the Commission discretion to remove the Rule

---

5. It has been held that only a "final order" is reviewable by a Court of Appeals under Section 9(a) of the Securities Act or Section 25(a) of the Securities and Exchange Act. See, e. g., Jones v. Securities and Exchange Commission, 79 F.2d 617 (2d Cir.), affirming Securities and Exchange Commission v. Jones, 12 F. Supp. 210 (S.D.N.Y.1935), rev'd on other grounds, 298 U.S. 1, 56 S.Ct. 654, 80 L.Ed. 1015 (1936); Stardust, Inc. v. Securities and Exchange Commission, 225 F.2d 255 (9th Cir. 1955) (order for investigation); Securities and Exchange

Commission v. Andrews, supra; Resources Corporation International v. Securities and Exchange Commission, 97 F. 2d 788 (7th Cir. 1938); Guaranty Underwriters, Inc. v. Securities and Exchange Commission, 131 F.2d 370 (5th Cir. 1942).

6. There is also some doubt as to whether, on petition to this court to review the order against it, Holman could test the validity of all the consequences of that order, including the restrictions imposed by Rule 252(e) (2).

252(e) (2) disqualification with respect to a particular issue. Resort to it is accordingly not a mandatory prerequisite to this suit, which seeks relief of much broader nature.

■ We think that the District Court had, and we now have, jurisdiction to consider and decide the question whether Rule 252(e) (2) is invalid because it deprives Holman of a going business without notice or hearing.[7] We now turn to that question.

Holman appears to be making two assumptions about the question. The first assumption is that a hearing is required prior to the taking of agency action of the present sort. The second is that the mere bringing of charges cannot lawfully result in any serious consequence to the person charged. Neither of these closely-related assumptions is tenable in the present context. In a wide variety of situations, it has long been recognized that where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing. Thus, in Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), the action of the Federal Home Loan Bank Administration in appointing a conservator of a Savings and Loan Association prior to notice or hearing was upheld against constitutional challenge. And the summary seizure and destruction of food reasonably suspected of being unfit was many years ago sustained by the Supreme Court in North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908).[8]

A decision which is especially relevant to the case before us is Halsey, Stuart & Co. v. Public Service Commission, 212 Wis. 184, 248 N.W. 458 (1933). There, a statute providing for summary suspension of a stock broker's license, followed

---

**7.** In response to Holman's motion in the District Court for declaratory and injunctive relief, Commission counsel moved to dismiss both because of lack of jurisdiction and for failure to state a cause of action. The order of Judge Tamm reads:

"The cause having come on for hearing on plaintiff's motion for preliminary injunction and defendants' motion to dismiss the complaint *for failure to state a cause of action* and the Court having heard the argument * * *, it is hereby ORDERED * * *." (Emphasis added.)

We read the order of the District Court as saying that the court assumed that it had jurisdiction, and then ruling on the motion to dismiss for failure to state a claim. Under Fed.R.Civ.P. 41(b), 28 U.S.C., such a dismissal for failure to state a claim acts as an adjudication on the merits. We therefore need not remand, but, having concluded that the District Court had jurisdiction, are now free to review the Rule 252(e) (2) question on the merits.

Moreover, there would be little practical reason for remanding to the District Court. A question of law is involved, and constitutional law at that. There would seem to be no new facts to be developed by the trial court which would help us in our determination. Neither party asks for remand, or suggests the need for fact-finding on the constitutional issue. Finally, we already have the case before us, have already had the benefit of argument, and can expedite proceedings by deciding the question now.

**8.** See also Adams v. Milwaukee, 228 U.S. 572, 33 S.Ct. 610, 57 L.Ed. 971 (1913). Thus, the seizure of articles in advance of a judicial determination of the seizure's legality has been sustained in many contexts. See, e. g., People v. Diamond, 233 N.Y. 130, 135 N.E. 200 (1922) (wine); Haney v. Compton, 36 N.J.L. 507 (Ct.Err. & App.1873) (seizure of fishing vessel). Cf. Bourjois, Inc. v. Chapman, 301 U.S. 183, 57 S.Ct. 691, 81 L.Ed. 1027 (1937). Compare La Bonte v. City of Berlin, 85 N.H. 89, 154 A. 89 (1931), where the temporary suspension of a police officer was held permissible during investigation of charges.

Appellant relies on Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed. 2d 1377 (1959), which dealt with the problem of permanently barring an individual from a type of employment for security reasons without a full hearing at any stage. But the question before us is not whether Holman is entitled to a hearing at all, but whether the hearing must be given *prior* to a temporary disqualification from making Regulation A offerings.

by a hearing if demanded by the broker, was upheld against a charge of unconstitutionality. To quote the opinion:

"It is said that there is no provision for a hearing. It is true that there is none prior to suspension. We do not regard this as fatal to the validity of the law. Having in mind that this is an exercise of the police power, and that it is valid in so far as it is reasonably necessary and appropriate to the promotion of the public welfare, it seems to us that the act must be sustained. The court may take notice of the fact that much harm may come to the citizens of the state, and that they may be the victims of much fraud and imposition unless they are speedily protected from improper practices in the sale of securities. Having in mind modern sales methods and the speed at which the business of today is done, promptness of action on the part of the commission may be the measure of its effectiveness. While the suspension may seriously damage the business of a particular broker, this consideration is not fatal to the validity of the act, provided it is reasonably necessary to protect the public. The rights of the public to exercise the police power in its own protection are superior to those of any individual broker to sell under his license or certificate." 248 N.W. at 461.

Cases of this sort involve a balancing of competing interests. The interest asserted by the Securities and Exchange Commission is protection of the securities-purchasing public. Normally, this is achieved by extensive registration and disclosure provisions. The Commission

in Rule 252(e) (2) has provided that while a suspension hearing is in progress under Rule 261 these "usual" protective measures, rather than the far less protective requirements applicable under Regulation A, shall govern issuance of securities by a party against whom suspension proceedings have been instituted.

On the other hand, Holman is asserting an interest in continuing to issue public offerings of securities of $300,000 or less without full registration, despite the suspension proceeding pending against it. Appellant has not been completely put out of business, as it would be if its license were suspended. It can issue any security if it complies with full registration requirements. And appellant may even be free to undertake some or many Regulation A issues by resort to Rule 252(f), if it can make a sufficient showing of good cause. Of course, Holman has been deprived of a portion of its previous business by the operation of Rule 252(e) (2). But this is a consequence very different from being put out of business entirely. In sum, the Securities and Exchange Commission's interest in protecting the public would seem to outweigh appellant's interest in being able to market small issues of securities without full registration for a temporary period while a hearing is in process.[9]

In all the statutes under which the Securities and Exchange Commission operates, Congress has given it broad rule-making powers. See III Loss, Securities Regulation 1936 et seq. (1961). In view of the nature of the subject matter, the grant of such powers was imperative, to protect investors against fraud or deception made possible by constantly changing conditions. In the field of exemp-

9. Standard Airlines, Inc. v. Civil Aeronautics Board, 85 U.S.App.D.C. 29, 32, 177 F.2d 18, 21 (1949), and similar cases, involved different competing interests and are distinguishable. In Standard Airlines, for example, the public safety would have apparently not been seriously jeopardized by allowing Standard to remain in business until after hearings, since safety regulations were not involved. And the injury to the appellant in the Standard case caused by the temporary suspension seems to have been far more serious than the injury to Holman's business. See also Capital Airways, Inc. v. Civil Aeronautics Board, 110 U.S.App.D.C. 262, 292 F.2d 755 (1961).

tions from registration, the desire of Congress to protect the public appears paramount: the Commission is warned that in no event can it use the powers confided to it by Section 3(b) of the 1933 Act to exempt the public offering of an issue aggregating more than $300,000.[10] The House Report on a bill offered in 1954 to amend certain provisions of the securities legislation noted that Regulation A in its present form "provides for disclosure and disciplinary checks and suspension power so as to assure that issues offered under the regulation are offered under conditions which furnish practical protection against fraud." [11] The corresponding Senate Report also indicated that the Commission's regulations were known to the Congress and formed part of the basis upon which the new proposals should be considered.[12] We must conclude that Congress saw nothing in Regulation A as a whole, or in Rule 252 in particular, which conflicted with its purpose: the contrary inference is rather to be drawn.

We conclude by saying that we find no arbitrariness in the operation of the challenged Rule in this case. The restriction imposed is a reasonable consequence of the charges reported against appellant by the Commission's staff, and is reasonably designed to protect the public until those charges are heard and adjudicated.

For these reasons, the judgment of the District Court will be

Affirmed.

10. Section 3(b) provides:
"The Commission may from time to time by its rules and regulations, and subject to such terms and conditions as may be prescribed therein, add any class of securities to the securities exempted as provided in this section, if it finds that the enforcement of this title with respect to such securities is not necessary in the public interest and for the protection of investors by reason of the small amount involved or the limited character of the public offering; but no issue of securities shall be exempted under this subsection where the aggregate amount at which such issue is offered to the public exceeds $300,000."

11. H.R.Rep. No. 1542, 83rd Cong., 2d Sess. 17 (1954), 2 U.S.Code Congressional and Administrative News 1954, p. 2973.

12. See S.Rep. No. 1036, 83rd Cong., 2d Sess. 8, 13 (1954).

stricting trucking competition did not violate the Sherman Act.