**Ray MARSHALL, Secretary of Labor, United States Department of Labor**

v.

**Thomas CONWAY, George Salada and Leroy Salada, doing business as C. S. & S. Coal Company.**

**Civ. A. No. 79–4511.**

United States District Court, E. D. Pennsylvania.

May 28, 1980.

Marshall H. Harris, Regional Sol., U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Lee A. Solomon, Philadelphia, Pa., for defendants.

### FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

HUYETT, District Judge.

#### I. *Findings of Fact*

1. The stipulation of uncontested facts, a copy of which is attached hereto as Appendix A, is adopted and incorporated herein as if set out in full.

2. Defendants have been given an opportunity for a hearing in regard to each citation and order issued.

3. Defendants' refusal to permit an authorized representative of the Secretary of Labor to enter upon and to conduct an inspection of their mine constitutes a continuing threat to the health and safety of miners and interferes with, hinders, and delays the Secretary and his authorized representative in carrying out the provisions of the Act.

4. Defendants' failure to comply with the citations and orders of withdrawal listed in the stipulation constitutes a continuing hazard to the health and safety of miners and other persons in or about the mine.

#### II. *Discussion*

█ This action was instituted by the Secretary of Labor pursuant to the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801 *et seq.*, to enjoin defendants from operating their mine in violation of withdrawal orders issued pursuant to the Act and from denying entry to authorized representatives of the Secretary. The issue was tried to the Court on February 22, 1980. The vast majority of relevant facts are uncontested. *See* Finding of Fact No. 1. Although defendants concede that they denied entry to Federal Coal Mine Inspector Scheib and that they have continued to extract coal from their mine following the issuance of orders of withdrawal, they contend that for a variety of reasons the Secretary is not entitled to the permanent injunction he seeks. The majority of defendants' arguments, however, have clearly been determined to be without merit in this Circuit. A federal mine inspector is not required to procure a search warrant before conducting an inspection under the Act. *Marshall v. Stoudt's Ferry Preparation Co.,* 602 F.2d 589 (3d Cir. 1979), *cert. denied,* 444 U.S. 1015, 100 S.Ct. 665, 62 L.Ed.2d 644 (1980); *Marshall v. Donofrio,* 465 F.Supp. 838 (E.D.Pa.1978), *aff'd,* 605 F.2d 1196 (3d Cir. 1979), *cert. denied,* —— U.S. ——, 100 S.Ct. 1067, 62 L.Ed.2d 787 (1980). The provisions of the Act apply to defendants, even though only owner-operators work the mine. *Marshall v. Kraynak,* 604 F.2d 231 (3d Cir. 1979), *cert. denied,* 444 U.S. 1014, 100 S.Ct. 664, 62 L.Ed.2d 643 (1980); *Marshall v. Donofrio, supra.*

█ Defendants' argument that the injunction the Secretary seeks will further no public interest is equally without merit. In its findings and declaration of purpose, Congress explicitly recognized the importance of insuring safety in the mining industry. *See* 30 U.S.C. § 801. Contrary to defendants' contentions, the Congressional findings and purposes that motivated the Act are applicable even in a case in which only owner-operators venture into the mine. Because owner-operators who work the mine are "miners" within the meaning of

the Act, *Marshall v. Kraynak, supra,* they fall within the category of persons whose safety Congress desired to protect. Moreover, the disruption of coal production that may result from unsafe conditions in owner-operated mines can burden commerce in the same manner as similar disruptions in other mines. *See* 30 U.S.C. § 801(f). Although these and similarly situated owner-operators may question the wisdom of the particular regulatory system that Congress has devised to implement its goals, those concerns are political in nature and are properly addressed to Congress, not to the courts.

▪ The major thrust of defendants' case has focused on the contention that "the penalty provisions of the Act violate the due process clause of the fifth amendment to the United States Constitution." Before addressing the merits of this contention, we must determine if we should in fact consider this issue. The Secretary argues that defendants, who have not pursued any of the review procedures established by the Act, have failed to exhaust their administrative remedies and are therefore not entitled to a ruling on their due process claim at this time. "[E]xhaustion is grounded in a concept of judicial self-restraint, admonishing courts that constitutional issues should not be decided, and legislation should not be invalidated, if a controversy may be resolved on some other ground." *Babcock and Wilcox Co. v. Marshall,* 610 F.2d 1128, 1137 (3d Cir. 1979) (footnote omitted). However, exhaustion is not required in all cases. For example, "exhaustion of administrative remedies has not been required when the administrative procedure itself is alleged to violate a constitutional right—e. g., when an administrative procedure violates due process by not affording a claimant prior notice and a hearing . . . ." *Id.* at 1138 (footnote omitted). Consistent with this approach, the court in *Southern Ohio Coal Co. v. Marshall,* 464 F.Supp. 450 (S.D.Ohio 1978), required the plaintiff to exhaust administrative remedies on the question whether temporary reinstatement of a foreman allegedly discharged because of concern about mine safety could ever be

constitutional, but declined to require exhaustion on the question whether due process was denied by failing to afford a hearing prior to ordering temporary reinstatement. Our decision whether exhaustion is required in this case is complicated by the broad-brushed and somewhat imprecise nature of defendant's attack upon the "penalty provisions." However, as we understand defendants' position, we believe that exhaustion is not required. We shall therefore consider the merits of defendants' contentions.

Defendants rely primarily upon *Virginia Surface Mining and Reclamation Ass'n v. Andrus,* 483 F.Supp. 425 (W.D.Va.1980), in which the court held, *inter alia,* that certain provisions of the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201–1328, violate procedural due process. In this case, defendants argue that the Act violates procedural due process by permitting the summary issuance of citations, "proposed fines," and orders of withdrawal without a prior hearing. Defendants characterize these issues as "solely legal." Respondents' reply to petitioner's brief at 2.

Defendants correctly point out that the Act permits the issuance of citations and withdrawal orders without a prior hearing. *See* 30 U.S.C. §§ 814(a) & (b). However, elaborate review procedures are also provided. *See* 30 U.S.C. §§ 815(d), 816. The Federal Mine Safety and Health Review Commission ("the Commission") has interpreted the Act to permit an operator to contest a citation immediately upon its issuance. *Energy Fuels Corp.,* 1 MSHC 2013, 2019 (1979). He may also, of course, contest, *inter alia,* an order of withdrawal issued under 30 U.S.C. § 814, a proposed assessment of a penalty, or the reasonableness of the length of abatement time fixed in a citation. 30 U.S.C. § 815(d). If the operator contests, the Commission must afford an opportunity for a hearing in accordance with 5 U.S.C. § 554. The applicable regulations require that Judges give due regard to the convenience and necessity of the parties in determining hearing sites. 29 C.F.R. § 2700.51 (1979). A party may request expedited proceedings. *Id.* § 2700.52. In addition, an operator may request tem-

porary relief from any order issued under 30 U.S.C. § 814. 30 U.S.C. § 815(b)(2). Moreover, an operator aggrieved by an order of the Commission may obtain review in a United States court of appeals. 30 U.S.C. § 816. These review procedures have been described as "the safeguard provided by Congress against arbitrary action or abuse of discretion by administrators in carrying out their responsibilities under federal statutes." *Bernitsky v. United States*, 620 F.2d 948, 956 (3d Cir. 1980).

■ These procedures clearly provide operators with a full opportunity to be heard. The sole remaining question is whether due process is offended by providing for these elaborate hearings only after the Secretary has acted. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "In a wide variety of situations, it has long been recognized that where harm to the public is threatened, and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing." *R. A. Holman & Co. v. SEC*, 299 F.2d 127, 131 (D.C. Cir.), *cert. denied*, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962). An order requiring the cessation of mining activities clearly implicates important private interests. However, in this case significant public concerns are also present. As discussed above, Congress has manifested its deep concern for the safety of miners. In our balancing of competing interests, this determination is entitled to great weight. Although serious economic consequences can follow a withdrawal order, the situation faced by the operators is far different from that of the welfare recipient in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), who faced loss of the last line of support. Moreover, the governmental interest in this case is more pressing than the desire to protect public funds. Under the circumstances, we hold that due process is not offended by not granting defendants a hearing prior to the issuance of citations and orders. This decision, we believe, is consistent with prior caselaw.

*See, e. g., Sink v. Morton*, 529 F.2d 601 (4th Cir. 1975); *Lucas v. Morton*, 358 F.Supp. 900 (W.D.Pa.1973); *cf. In re Surface Mining Regulation Litigation*, 456 F.Supp. 1301 (D.D.C.1978). To the extent that *Virginia Surface Mining and Reclamation Ass'n v. Andrus, supra*, which was decided under a similar but distinct statutory framework, suggests the contrary result, we decline to follow that case. First of all, we believe that in the case of this Act, the balancing of competing private and public interests compels a different result. Secondly, we note that the regulations concerning coal mine health and safety, *see* 30 C.F.R. Chap. I, Subchapter 0 (1979), are quite detailed. Their specificity appears reasonably calculated to protect against erroneous deprivations. *See Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

For all of the foregoing reasons, we find the defendants' due process challenge to the Act to be without merit. It is conceivable, of course, that an operator may be able to show that the procedural protections of the Act were applied in a manner violative of his due process rights. These defendants have made no such showing, however. First of all, they have chosen not to pursue their administrative remedies; therefore, there is no basis for finding that the procedural protections were not applied in a fair manner. Nor have defendants produced any testimony or affidavits that suggest any reason for believing that the procedures would not have been properly applied in their case. Although defendants contend, without supporting affidavits, that they may be required to attend hearings several hundred miles from their mines in order to avail themselves of the protection of the Act, this contention is refuted by an uncontradicted affidavit of James A. Broderick, Chief Administrative Law Judge of the Federal Mine Safety and Health Review Commission. Exhibit D to petitioner's brief.

III. *Conclusions of Law*

1. This court has jurisdiction over the parties and the subject matter of this action.

2. The defendants' operations affect commerce within the meaning of the Act.

3. Owner-operated mines that have no non-owner employees are subject to the provisions of the Act.

4. A search warrant is not required for an inspection conducted pursuant to the Act.

█ 5. All citations and orders issued to defendants were duly issued pursuant to provisions of the Act.

6. The provisions of the Act do not deprive defendants of due process of law.

█ · 7. Defendants' refusal to permit an authorized representative of the Secretary of Labor to enter upon and to conduct an inspection of their mine constitutes a continuing threat to the health and safety of miners and interferes with, hinders and delays the Secretary and his authorized representative in carrying out the provisions of the Act.

█ 8. Defendants' failure to comply with the citations and orders of withdrawal listed in the stipulation of uncontested facts and incorporated into the findings of fact constitutes a continuing hazard to the health and safety of miners and other persons in or about the mine.

9. Plaintiff is entitled to a permanent injunction. Based upon the foregoing findings of fact, discussion and conclusions of law, judgment shall be entered in favor of the Secretary and against the defendants, and a permanent injunction shall be issued.

## APPENDIX "A"

### STIPULATION OF UNCONTESTED FACTS

AND NOW, this 15th day of February, 1980, it is hereby stipulated by and between counsel for Plaintiff Ray Marshall, Secretary of Labor, United States Department of Labor, and counsel for Defendants Thomas Conway, George Salada and Leroy Salada, doing business as C.S.&S. Coal Company, a partnership, that:

1. Defendants Thomas Conway, George Salada and Leroy Salada are partners in C.S.&S. Coal Company.

2. Defendants, acting through the partnership, own and operate the C.S.&S. Coal Company Mammoth Slope Mine, located in Lincoln, Schuylkill County, Pennsylvania (hereinafter referred to as the "mine").

3. Defendants are engaged in extracting anthracite coal at the mine, and the operation of the mine affects interstate commerce.

4. Defendants Thomas Conway, George Salada and Leroy Salada, in addition to owning and operating the mine, are the only individuals engaged in mining coal at the mine, and do so without employee-miners.

5. Michael Scheib is, and at all times relevant was, an agent of the Secretary of Labor, authorized by the Secretary of Labor to conduct coal mine inspections pursuant to the provisions of the Federal Mine Safety and Health Act of 1977, 30 U.S.C. §§ 801, et seq. (hereinafter referred to as "the Act").

6. On March 5, 1979, pursuant to § 104(a) of the Act, 30 U.S.C. § 804(a), Federal Coal Mine Inspector Michael Scheib issued citation No. 225228 to Defendants following inspection of the mine.

7. On March 6, 1979, pursuant to § 104(a) of the Act, 30 U.S.C. § 804(a), Federal Coal Mine Inspector Michael Scheib issued citation No. 225235 to Defendants following inspection of the mine.

8. On March 20, 1979, pursuant to § 104(a) of the Act, 30 U.S.C. § 804(a), Federal Coal Mine Inspector Michael Scheib issued citation No. 225238 to Defendants following inspection of the mine.

9. No hearing was held prior to issuance of the citations set forth in paragraphs 6, 7 and 8 of this Stipulation.

10. On March 20, 1979, pursuant to § 104(b) of the Act, 30 U.S.C. § 804(b), Federal Coal Mine Inspector Michael Scheib issued orders of withdrawal Nos. 225239 and 225240 following inspection of the mine.

11. On March 21, 1979, pursuant to § 104(b) of the Act, 30 U.S.C. § 804(b),

Federal Coal Mine Inspector Michael Scheib issued order of withdrawal No. 225261 following inspection of the mine.

12. No hearing was held prior to issuance of the orders of withdrawal set forth at paragraphs 10 and 11 of this Stipulation.

13. On March 30, 1979, Federal Coal Mine Inspector Michael Scheib attempted to conduct an inspection of the mine pursuant to the Act.

14. Federal Coal Mine Inspector Michael Scheib did not possess a search warrant authorizing inspection of the mine when he sought to inspect the mine on March 30, 1979.

15. Federal Coal Mine Inspector Michael Scheib was denied entry to the mine by Defendants on March 30, 1979 because he did not possess a search warrant authorizing inspection of the mine.

16. On March 30, 1979, Federal Coal Mine Inspector Michael Scheib issued a Section 104(a) citation No. 225265 to Defendants.

17. No hearing was held prior to issuance of the citation as set forth at paragraph 16 of this Stipulation.

18. On March 30, 1979, Federal Coal Mine Inspector Michael Scheib issued order of withdrawal No. 225266; this order of withdrawal was issued for denial of entry.

19. No hearing was held prior to issuance of the order of withdrawal as set forth at paragraph 18 of this Stipulation.

20. The orders of withdrawal set forth at paragraphs 10, 11 and 18 of this Stipulation have not been vacated, terminated or withdrawn.

21. Defendants have continued to extract coal from the mine since March 20, 1979.

Post Office Address:
Marshall H. Harris
Regional Solicitor
Office of the Solicitor
U. S. Dept. of Labor
14480 Gateway Bldg.
3535 Market Street
Philadelphia, PA 19104
215–596–5170

/s/ Carin Ann Clauss
Solicitor of Labor

/s/ Marshall H. Harris
Regional Solicitor

/s/ Barbara Krause Kaufmann
Attorney

UNITED STATES
DEPARTMENT OF LABOR
Attorneys for Plaintiff

/s/ Lee A. Solomon, Esquire
Counsel for Defendants